CHICAGO, R. I. & G. RY. CO. v. O'DELL.

(Court of Civil Appeals of Texas. Amarillo. Nov. 15, 1913.)

1. RAILROADS (§ 443*) — KILLING ANIMALS — EVIDENCE—NEGLIGENCE.

Plaintiff's mule followed a horse across defendant's railroad track at night, and was struck by the side of defendant's engine. The engineer and fireman were keeping a lookout; but the mule at no time came within the range of the engine headlight, and was not seen until just before he was struck, prior to which there was no time to stop the engine, or give any signal which could have prevented the accident. Held insufficient to show actionable negligence on the part of the railroad company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1608–1620; Dec. Dig. § 443.*]

2. RAILROADS (§ 441*)—KILLING ANIMALS— BURDEN OF PROOF.

In an action against a railroad company for killing plaintiff's mule, the burden is on plaintiff, not only to establish negligence, but to show that such negligence was the proximate cause of the accident.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1575–1595; Dec. Dig. § 441.*]

Appeal from Gray County Court; Siler Faulkner, Judge.

Action by Fred O'Dell against the Chicago, Rock Island & Gulf Railway Company. Judg-ment for plaintiff, and defendant appeals. Reversed and rendered.

N. H. Lassiter, of Ft. Worth, and Gustavus & Jackson, of Amarillo, for appellant. A. S. Rollins, of Amarillo, and S. E. Boyett, of McLean, for appellee.

HALL, J. This is a damage suit for the killing of appellee's mule at a public crossing near McLean, Tex., originating in the justice court of Gray county, and, from a judgment for appellee, the case was appealed to the county court, where, upon a trial de novo, judgment was again rendered in favor of appellee for the sum of $150. Numerous errors have been assigned by appellant in this court, which it will not be necessary for us to consider further than the assignment numbered 4. Under this assignment it is insisted that the evidence is insufficient to support the verdict and judgment. The testimony of the engineer, corroborated by the fireman, is that on the night of October 14, 1912, the mule in question ran into the engine, and was killed. They further testified that a horse ran across the track just in front of the engine, barely escaping, and that the mule was following the horse; that the animals came out of the dark and onto the track; and the animal which was killed was not on the track until it struck the engine between the pilot beam and the cylinder. The engineer testified that he made an examination of the engine, and found the hair of the animal on the front head of the cylinder and behind the pilot beam, and, from the location of the hair, it was impossible for the front part of the engine to have struck the animal; that neither the engineer nor fireman from their positions in the cab of the engine could see the animal until just about the time it struck the engine; that prior to that time it was not on the track, nor within range of the engine headlight. They both testified they were keeping a lookout down the track; were running at about 20 miles an hour, and that the night was dark; that the animal was struck on a curve, but that they had full view of the crossing; that the whistle was sounded at the whistling post upon approaching the crossing; and that the animal seemed to be coming toward the engine at about right angles to the track. The fireman testified that the animal was struck by his side of the engine, and was not more than 6 or 8 feet from the track when he first saw it, and was running, and that there was not time to make any effort to stop the engine after he first saw it. This testimony is uncontraverted.

Appellee alleged that the crossing over the track at the point where the mule was killed was improperly and unskillfully constructed, and that it was constructed in such a manner that an animal coming upon the track from either direction could not leave it without

passing over the line of road, or jumping from the embankment into a deep ditch. No evidence was introduced by appellee to sustain this allegation; but, on the contrary, the section foreman testified as follows: "The general course of the road is east and west. At the place where the road crosses the railroad track the track is on a curve, and is one of the sharpest curves on the line, about 4 degrees. Just west of the crossing the track is on the east side of the public road, and from the crossing extending east is on the north side of the public road, and the public road going from McLean west makes a turn to the right in order to cross the track square instead of angling, and then turns to the left, continuing the course west." He further testifies: "The track at this place is on a 5-foot fill, and the approach to the track on either side is graded up by a gentle slope, and the slope is about 60 feet on each side, and the public roadway is about 18 feet wide. The embankment for the roadway slopes down from the edge to the level ground. I constructed this road-crossing, and it is built in the usual and ordinary manner, and was in good condition, and easily crossed by wagons, vehicles, or animals." He further testified: "There are some holes or barrow pits along the railroad track; but these barrow pits do not interfere with crossing the track in any manner. The grade for the public road, where it crosses the track, is across these barrow pits, and they are back from the track 25 or 30 feet. The place where the animal approached the railroad track was on the grade, and there was no necessity for the animal getting into a hole or a ditch of any kind, and, if it had not been struck, it would have gotten right on across the track on this grade on fairly level and smooth ground."

[1] It appears from this evidence that the accident did not occur by reason of any defect in the construction of the crossing, and that the engineer and fireman were performing their duties under the law in keeping such lookout as was required of them; that the mule, in an effort to cross the track, and keep up with the horse, which crossed immediately ahead of it, ran into the engine, resulting in its death. Under this evidence it is clear that the employés had no time to stop the engine or signal in any way which could have prevented the accident. As we understand the law, the railroad company is not responsible for the damages under such circumstances. S. K. Ry. Co. v. Graham, 155 S. W. 653; T. & P. Ry. Co. v. Bailey, 150 S. W. 962; St. L. S. W. Ry. Co. v. Conley, 142 S. W. 36; H. E. & W. T. Ry. Co. v. Foster, 142 S. W. 846; I. & G. N. Ry. Co. v. Mattews Bros., 158 S. W. 1048; M., K. & T. Ry. Co. v. Baker, 99 Tex. 452, 90 S. W. 869.

[2] The burden was upon appellee, not only to show negligence on the part of ap-

pellant, but that such negligence, if any, was the proximate cause of the injury. "This fact of causal connection between an alleged act or omission and an injury can no more be presumed than can the act or omission itself." T. & P. Ry. Co. v. Shoemaker, 98 Tex. 456, 84 S. W. 1052.

The case seems to have been fully developed, and, so far as the record shows, no eyewitnesses to the accident, other than the engineer and fireman, have been found.

Because the evidence is insufficient to authorize a recovery, the judgment is reversed and here rendered for the appellant.